UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EUGENE B. THACKER, III | CIVIL ACTION |
| VERSUS | NO. 20-1168 |
| PALMETTO SURETY CORPORATION | SECTION M (1) |

**ORDER & REASONS**

Before the Court is a motion by defendant Palmetto Surety Corporation ("Palmetto") to transfer the venue of this matter to the United States District Court for the District of South Carolina, Charleston Division.[1] Plaintiff Eugene B. Thacker, III, responds in opposition,[2] and Palmetto replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court denies the motion.

**I.  BACKGROUND**

This matter concerns an alleged breach of a commission agreement. Thacker, a citizen of Louisiana, is a former police officer, who has worked in the bail bond business for over 20 years as an agent, producer, and bounty hunter.[4] Palmetto, a citizen of South Carolina,[5] is an insurance company that has been authorized to sell surety lines in Louisiana since June 18, 2015.[6] In the fall of 2015, Mark Robbins, an insurance agent, contacted Thacker about an opportunity to help Palmetto grow its business in Louisiana.[7] About a week later, Thacker met with Tracy Gonzalez,

---

[1] R. Docs. 5; 5-1 at 2-3.
[2] R. Doc. 9.
[3] R. Doc. 13.
[4] R. Doc. 1-1 at 2-3.
[5] R. Doc. 1 at 2.
[6] R. Doc. 1-1 at 3.
[7] *Id.*

who Thacker understood to represent Palmetto, to discuss the details.[8]  Gonzalez introduced Thacker to Palmetto's chief operating officer, Scott Willis, and then Thacker, Willis, and Gonzalez discussed Thacker's using his contacts and reputation in the local bail bond community to introduce Gonzalez to local agents.[9]  Thacker alleges that he was promised a 0.5% commission on sales from anyone in Louisiana who signed up to sell insurance for Palmetto.[10]  According to Thacker, he began recruiting individuals and companies to sign up to sell insurance for Palmetto immediately after reaching the agreement, but before any contract was signed, and he says Palmetto was aware of his actions to perform their agreement.[11]

On January 6, 2016, the Louisiana Department of Insurance appointed Thacker as a producer of insurance for Palmetto, which meant that he could sell Palmetto policies to customers.[12]  On January 29, 2016, Palmetto sent to Thacker for signature a bail bondsman contract, a recovery contract, and a commission agreement.[13]  Thacker alleges that he signed and mailed back the documents on January 30, 2016.[14]

Thacker alleges that the commission agreement memorialized the parties' agreement by which he was to earn commissions for recruiting other agents to write for Palmetto.[15]  According to Thacker, his recruiting efforts led to a significant growth in Palmetto's business in Louisiana.[16]  Thacker alleges that in 2015, Palmetto appointed 75 surety line producers and wrote $38,325 in direct premiums, equating to a statewide market share of 0.036%.[17]  By 2018,

---

[8] *Id.*
[9] *Id.*
[10] *Id.* at 3-4.
[11] *Id.* at 4.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 4-5.
[16] *Id.* at 7.
[17] *Id.* at 3.

after Thacker had been recruiting agents for a few years, Palmetto wrote $1,342,130 in direct premiums, which amounted to a 1.078% statewide market share in the surety line of insurance.[18]

Thacker alleges that he received commission payments from Palmetto.[19] But on March 7, 2017, he noticed that some of the individuals he recruited to be agents were not on his list of agents for which he was receiving commissions, including sub-agents that worked directly for him.[20] Thacker notified Willis of the discrepancy through Willis's executive assistant and continued to work for Palmetto despite the issue.[21] In August 2019, Thacker stopped receiving commission checks from Palmetto.[22]

On February 7, 2020, Thacker filed this action in the Civil District Court for the Parish of Orleans, State of Louisiana, alleging that Palmetto breached the commission agreement in bad faith by incorrectly calculating the commissions owed to him, failing to include all of the agents and agencies from which he was entitled to collect commissions, and refusing to pay his commissions without grounds.[23] Thacker also raises claims for detrimental reliance and unjust enrichment.[24]

According to Thacker, Palmetto contends that (1) its sole contract with Thacker is the bail bondsman agreement, (2) the commission agreement was an oral agreement, lacking documentation, and was between him and just Gonzalez, individually, because Gonzalez is an independent sales representative, (3) the commission agreement was for Thacker to receive half of Gonzalez's commissions on identified agents, (4) the commission agreement required Thacker to use exclusively Palmetto as his writing surety, and (5) Thacker's breach of the exclusivity

---

[18] *Id.* at 7.
[19] *Id.*
[20] *Id.*
[21] *Id.* at 7-8.
[22] *Id.* at 8.
[23] *Id.* at 8-9.
[24] *Id.* at 9.

requirement caused Palmetto to discontinue his commission payments to him.[25] Thacker alleges that Palmetto's contentions are contrary to the commission agreement, which he attached to the complaint, and to Gonzalez's representation that she was Palmetto's managing general agent.[26] On April 10, 2020, Palmetto removed the case to this Court alleging diversity subject-matter jurisdiction under 28 U.S.C. § 1332.[27]

## II. PENDING MOTION

Palmetto, citing a clause in its bail bondsman contract with Thacker, argues that this case should be transferred to the United States District Court for the District of South Carolina, Charleston Division.[28] The clause in question states:

> **Applicable Law.** This Agreement shall be construed and governed in accordance with the laws of the State of Louisiana. Venue for any action hereunder shall be in Charleston, South Carolina.[29]

Palmetto argues that this is a mandatory forum selection clause found in the only fully-executed agreement between the parties.[30] Palmetto denies the validity of the commission agreement, which, it asserts, was not executed.[31] According to Palmetto, because Thacker refers in the complaint (1) to Palmetto's assertion that it stopped paying commissions due to Thacker's breach of the exclusivity requirement; and (2) to the non-exclusivity provision in the bail bondsman contract, the dispute arises out of the bail bondsman contract, thus requiring the Court to analyze and interpret both it and the commission agreement.[32]

---

[25] *Id.* at 8.
[26] *Id.*
[27] R. Doc. 1.
[28] R. Docs. 5; 5-1 at 2-3.
[29] R. Docs. 5-1 at 2; 1-1 at 20.
[30] R. Doc. 5-1 at 4.
[31] *Id.* at 2.
[32] R. Doc. 13 at 2-3.

Thacker argues that transfer is not warranted because this dispute concerns the commission agreement, not the bail bondsman agreement, and the commission agreement does not include a venue provision or forum selection clause.[33] Thacker further argues that the forum selection clause in the bail bondsman agreement is not mandatory and thus, even if it did apply, transfer would not be warranted.[34]

### III.   LAW & ANALYSIS

A forum selection clause pointing to a state or foreign forum is properly enforced through the doctrine of *forum non conveniens*. *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60 (2013). Ordinarily, in ruling on such a motion the district court considers various private- and public-interest factors. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 (5th Cir. 2016). "The private-interest factors include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* at 766-67 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). "The public-interest factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 767 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6). The plaintiff's choice of forum is usually given significant, but not determinative, weight. *Id.* (citing *Atl. Marine,* 571 U.S. at 62 n.6).

However, if there is a mandatory, enforceable forum selection clause, the plaintiff's choice of forum is given no weight, and the plaintiff must establish that dismissal is unwarranted.

---

[33] R. Doc. 9 at 2-4.
[34] *Id.* at 4-7.

*Id.* (citing *Atl. Marine*, 571 U.S. at 63-64). Also, the district court should consider only the public-interest factors, and not the private-interest ones, because the private-interest factors are deemed to weigh entirely in favor of the preselected forum. *Id.* (citing *Atl. Marine*, 571 U.S. at 64). Because the public-interest "'factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).

These principles are not relevant to this case, however, because the commission agreement (whether the written or oral version) is the operative agreement for this matter, and there is no forum selection clause in the commission agreement. A careful reading of the complaint reveals that this dispute arises out of the alleged commission agreement, not the bail bondsman contract. Thacker alleges that Palmetto failed to properly pay him commissions for the sales made by new agents he enlisted to write for Palmetto. The bail bondsman contract is referenced in the complaint as one of the grounds Palmetto asserts for discontinuing the payment of commissions to Thacker, but it is not the contract "under" which Thacker brings this action. The venue provision in the bail bondsman contract specifies venue "for any action hereunder" (*i.e.,* any action under the bail bondsman contract), not for any action under the commission agreement. Even if it is necessary for this Court to consult, perhaps even construe, the bail bondsman contract to gain context and understanding for this dispute over the commission agreement, it still cannot be said that the "action" arises under the bail bondsman contract.

Significantly, Palmetto recognized as much when, in paragraph XI of its notice of removal (complete with citations to specific paragraphs of the complaint), it summarized Thacker's "claims that Palmetto breached the Commission Agreement" as follows:

1. Thacker is entitled to compensation for .5% of all sales made by Palmetto after he allegedly entered into the Commission Agreement in January of 2016, as it was due to Thacker's efforts that Palmetto increased its business in

>   Louisiana.
>
> 2. Thacker is entitled to additional damages for bad faith breach of the contract by Palmetto.
>
> 3. Finally, Thacker is also entitled to reimbursement for all of [his] expenses allegedly incurred in procuring business for Palmetto.[35]

This summary makes no mention of the bail bondsman contract. Thus, it is evident that even Palmetto understands that the genesis of this dispute is the alleged commission agreement, not the bail bondsman contract. As such, this Court finds that there is no forum selection clause in play, and Palmetto's motion to transfer must be denied.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Palmetto's motion to transfer (R. Doc. 5) is DENIED.

New Orleans, Louisiana, this 21st day of May, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[35] R. Doc. 1 at 3 (citations omitted).